# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

NATHANIAL GERALD SERRELL
MACK,

Plaintiff,

vs.

PETE RICKETTS, Nebraska State
Governor (officially and Individually);
DAVID HEINAMEN, Former Governor
(Officially and Individually); SCOTT
FRAKES, N.D.C.S. Director (Officially
and Individually); MICHEL KENNEY,
Former N.D.C.S. Director (Officially
and Individually); ROBERT P.
HOUSTON, Former N.D.C.S. Director
(Officially and Individually); MICHAEL
ROTHWELL, N.D.C.S. Deputy Director
Division of Programs and Community
Services (Officially and Individually);
DIANE SABATKA-RINE, Deputy
Director of Opperations (Officially and
Individually); ROSALYN COTTON,
Nebraska State Parole Board Chair
(Officially and Individually); REX
RICHARDS, Nebraska State Parole
Board Vice Chair Person (Officially and
Individually); MARIO PURT, Lincoln
Correctional Center Warden (Officially
and Individually); ROBERT MADSON,
Nebraska State Penitentiary Warden
(Officially and Individually); RICHARD
CRUICKSHANK, Nebraska State
Penitentiary Warden (Officially and
Individually); JASON HURT, Nebraska
State Penitentiary Associate Warden and
Former Lincoln Correctional Center

8:17CV495

**MEMORANDUM
AND ORDER**

Unit Adminatrator (Officially and Individually); DAVID HARDGRAVES, Lincoln Correctional Center Unit Adminastrator and former Housing Unit Bravo Unit Manager (officially and Individually); DR. JEFF MELVIN, PH.D. N.D.C.S. Behavioral Health Assistant Administrator for Sex Offender Services and C-Sort (Clinical Sex Offender Review Team) Chair Person (Officially and Individually); DR. STEPHANIE BRUHN, N.D.C.S. Behavioral Health Assistant Administrator for Sex Offender Services and C-Sort Team Chair Person (Officially and Individually); WAYNE CHANDLIER, N.D.C.S. Behavioral Health Assistant Administrator for Mental Health Services (Officially and Individually); TAMMY JACKSON, LIMHP N.D.C.S. Mental Health practioner Clinical Sex Offender Programs Manager and C-Sort Vice Chair Person (Officially and Individually); PAUL RODRIQIEZ, LIMHP N.D.C.S. Clinical Sex Offender Programs Manager and C-Sort Team Vice Chair Person (Officially and Individually); JANE DOE I, Former Nebraska State Penitentiary Mental Health Practioner II (Officially and Individually); HEATHER JACKSON, Nebraska State Penitentiary Mental Health Practioner II (Officially and Individually); JERAMY SIMONSEN, Nebraska State Penitentiary Mental Health Practioner II and former Acting Clinical Sex Offender Programs

2

Manager and C-Sort Vice Chair Person
(Officially and Individually); and TOM
PFEIFER, Nebraska State Penitentiary
Librarian (Officially and Individually) et
al.;

Defendants.

Plaintiff, a prisoner in the custody of the Nebraska Department of
Correctional Services ("NDCS"), brings this 42 U.S.C. § 1983 action in which he
generally complains about the NDCS' failure to timely screen him for and provide
mental health programming prior to his parole eligibility date. He has been given
leave to proceed in forma pauperis. (Filing No. 9.) The court now conducts an
initial review of Plaintiff's Complaint (filing no. 1) to determine whether summary
dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A. As part of its
initial review, the court will also consider Plaintiff's Motion to Amend Complaint.
(Filing No. 15.)

## I. SUMMARY OF COMPLAINT

Plaintiff has been in the custody of NDCS since 2006 and was incarcerated
at the Nebraska State Penitentiary ("NSP") at the time he filed this action but has
since been transferred to the Lincoln Correctional Center ("LCC"). Plaintiff named
twenty-three Defendants in their individual and official capacities in the caption of
his Complaint. Liberally construed, Plaintiff named an additional eleven
Defendants in the body of his Complaint[1] but did not specify in what capacity these
eleven Defendants are sued. Defendants include the current and former governors
of the State of Nebraska, members of the Nebraska State Board of Parole, and past

---

[1] *See Miller v. Hedrick*, 140 Fed. App'x 640, 641 (8th Cir. 2005) (citing *Rice v. Hamilton
Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in
a case if the allegations in the body of the complaint make it plain that the party is intended as a
defendant.")).

and current employees of the NDCS such as prison directors, wardens, unit managers, mental health practitioners, law librarians, and other NDCS employees.[2]

----

[2] The twenty-three Defendants named in the caption in their official and individual capacity are:

- Nebraska Governor Pete Ricketts and former Governor Dave Heineman;
- NDCS Director Scott Frakes and former NDCS Directors Mike Kenney and Robert P. Houston;
- Deputy NDCS Directors Michael Rothwell and Diane Sabatka-Rine;
- Nebraska Board of Parole Chairperson Rosalyn Cotton and Vice Chairperson Rex Richards,
- Mario Purt, Warden of the LCC; Robert Madsen, Warden of the NSP; and Richard Cruickshank, former Warden of the NSP;
- Jason Hurt, Associate Warden of the NSP and former Unit Administrator of the LCC;
- David Hardgraves, Unit Administrator of the LCC and former Unit Manager of LCC Housing Unit Bravo;
- Dr. Jeff Melvin, Ph.D., Assistant Behavioral Health Administrator for Sex Offender Services for NDCS and Committee Chairperson for the Clinical Sex Offender Review Team ("C-Sort"), and Dr. Stephanie Bruhn, Ph.D., who formerly held Dr. Melvin's positions;
- Wayne Chandlier, Assistant Behavioral Health Administrator for Mental Health Services at the LCC;
- Tammy Jackson, Clinical Sex Offender Program Manager and C-Sort Team Vice Chairperson assigned to the LCC; Paul Rodriqiez, former Clinical Sex Offender Program Manager and C-Sort Team Vice Chairperson assigned to the Omaha Correctional Center; and Jeramy Simonsen, former acting Clinical Sex Offender Program Manager and C-Sort Team Member assigned to the NSP;
- Heather Jackson, Mental Health Practitioner II and C-Sort Team Member, and Jane Doe, former Mental Health Practitioner II and C-Sort Team Member; and
- Tom Pfeifer, the NSP Librarian.

The eleven Defendants named in the body of the Complaint are:

- David Scow, an LCC Unit Manager (filing no. 1 at CM/ECF p. 11, ¶ 47);
- LCC Bravo Unit Case Managers John Divis, Brandon Tan, Windy Millier, John Doe I, and John Doe II (id. at CM/ECF p. 12, ¶ 49);
- NSP Case Managers John Doe III and John Doe IV (id. at CM/ECF p. 39, ¶ 136);
- Dr. Randy Kohl, Ph.D., former NDCS Medical Director (id. at CM/ECF p. 16, ¶ 68);
- Scott Marshall, Unit Manager of NSP Housing Unit 7 (id. at CM/ECF pp. 33–34, ¶ 122); and
- Machell Capps, Deputy Warden of the NSP (id. at CM/ECF pp. 34–35, ¶ 125).

Plaintiff alleges he was evaluated by mental health staff upon entry into NDCS custody and it was determined that he complete, among other things, "I-Help (Inpa[t]ient Health[y] Lives Program for Sex Offenders)." (Filing No. 1 at CM/ECF p. 9, ¶¶ 34–36.) Plaintiff was told that he would have to be evaluated and screened by the Clinical Sex Offender Review Team ("C-Sort") before being able to begin his sex offender programming. Thereafter, Plaintiff completed the Mental Health Program at LCC in approximately September 2012 and requested to be moved to Housing Unit "Eco" at LCC which offered the sex offender programming Plaintiff was required to complete. (Id. at CM/ECF pp. 10–11, ¶¶ 43–45.) Plaintiff's request was denied by the C-Sort team and Defendant Wayne Chandlier, Assistant Behavioral Health Administrator for Mental Health Services at LCC, because Plaintiff's "Parole Eligibility Date and . . . Tent[a]tive Release Date were to[o] far[] away." (Id. at CM/ECF p. 11, ¶ 45.) Plaintiff spent the next four years in Housing Unit Bravo, a general population unit at LCC, during which he continued to inquire about his need for sex offender programming. (Id. at CM/ECF pp. 11–12, ¶¶ 47–48.)

Plaintiff alleges that inmates are supposed to be screened for programming by the appropriate review team, such as C-Sort, two years before their parole eligibility dates. Plaintiff alleges he was eligible for parole on April 21, 2017, but was not screened by C-Sort until April 11, 2016. (Id. at CM/ECF pp. 13, 16, ¶¶ 55, 66.) It was recommended that Plaintiff participate in the Biblio-Therapy Healthy Lives Program ("B-Help"), and Plaintiff accepted his recommended programming on or about April 20, 2016. (Id. at CM/ECF p. 17, ¶ 70.) Plaintiff was transferred from LCC to NSP to start the B-Help program on or about May 5, 2016.

Plaintiff generally alleges that he complied with the B-Help program requirements and that his June 9, 2016 "midway Completion Report" recommended that Plaintiff complete the program and then go on to Work Release and receive a parole hearing in April 2017. (Id. at CM/ECF pp. 19–20, ¶ 80.)

However, Plaintiff later received an unsatisfactory completion of the B-Help program after Defendant Heather Jackson, a Mental Health Practitioner II at the NSP (hereinafter "Jackson (MHPII)"), and the C-Sort team[3] received kites from other inmates reporting alleged negative comments made by Plaintiff outside of the B-Help group sessions and after Jackson (MHPII) and Defendant Jane Doe, also a Mental Health Practitioner II at NSP (hereinafter "Doe (MHPII)"), spoke with Plaintiff about their concerns that he did not disclose certain "red flag" unhealthy sexual behaviors or that he identifies as a "transgender wom[a]n" and "lived what most of society would call a homosexual life style" during his March 17, 2016 screening interview. (*Id.* at CM/ECF pp. 21–27, ¶¶ 87–104.) Specifically, Defendant Dr. Stephanie Bruhn, the Assistant Behavioral Health Administrator for Sex Offender Services, informed Plaintiff on July 22, 2016, that he received an "Unsatisfactory Completion" of his programming due to his "assessment during the last couple of weeks of group, and the concerns with [his] Coping Skills, Assessment of Devi[a]nt thoughts and actions with Blood Letting, Defendant Jackson['s] (MHPII) and Defendant Doe['s] (MHPII) talk with [him] . . . , Inmates Writing kites on [him] making alleged statements, and other assessments made during group." (*Id.* at CM/ECF pp. 28–30, ¶¶ 108–109, 112.) Dr. Bruhn then informed Plaintiff that he had been assessed to complete I-Help, which at that time was a twenty-four to thirty-six month program offered at LCC.[4] (*Id.* at CM/ECF pp. 30–31, ¶ 112.)

Plaintiff filed a grievance on Dr. Bruhn, Jackson (MHPII), and Doe (MHPII) addressing his concerns with C-Sort's evaluation of his completion of the B-Help programming, stating:

---

[3] According to the Complaint's allegations, the members of the C-Sort team include Defendants Dr. Melvin, Dr. Bruhn, Tammy Jackson, Paul Rodriqiez, Jeramy Simonsen, Jackson (MHPII), and Jane Doe.

[4] Subsequently, on September 7, 2017, the I-Help program was changed to a more intensive Inpatient Program that takes twelve to fifteen months to complete. (Filing No. 1 at CM/ECF p. 33, ¶ 119.)

I was unjustly persecuted for my sexual orientation and that they were prejudiced in giving me my unsatisfactory completion. That the assessment for my unsatisfactory completion was due to my sexual orientation and a First Amendment violation, and inmates writing "kites" on me alleging that I made negative statements while on the unit . . . . I also . . . should have been assessed to complete O-Help first, and that based on my approximate June Sixteenth midway completion assessment, I should have received at least an adequate completion.

(*Id.* at CM/ECF p. 33, ¶ 120 (spelling, punctuation, and capitalization corrected).) As a result of Plaintiff's grievance, C-Sort changed his outcome to "withdrawn" from treatment and re-affirmed their recommendation that Plaintiff participate in I-Help. (*Id.* at CM/ECF p. 35, ¶ 126.) Plaintiff alleges he "was eligible for parole April [21, 2017], and because C-Sort fail[ed] to screen [him] in a timely manner, and their reevaluation that [he] complete I-Help, [he] was unable to complete [his] programming before [he] was eligible for early release 'parole.'" (*Id.* at CM/ECF pp. 38–39, ¶ 134 (spelling, punctuation, and capitalization corrected).)

Liberally construed, Plaintiff alleges claims of deliberate indifference to his medical needs, cruel and unusual punishment, denial of his freedom of speech, and denial of equal protection and due process against Defendants Dr. Melvin, Dr. Bruhn, Tammy Jackson (hereinafter "T. Jackson"), Paul Rodriqiez, Jeramy Simonsen, Jackson (MHPII), and Doe (MHPII). (*Id.* at CM/ECF pp. 46–47, ¶ 154.) Plaintiff alleges these same claims plus two additional claims of unlawful search and seizure and denial of his "freedom of religious activity" against Defendants Governor Pete Ricketts, former Governor David Heineman, and eleven current and former NDCS officials—Scott Frakes, Mike Kenney, Robert P. Houston, Dr. Randy Kohl, Michael Rothwell, Diane Sabatka-Rine, Mario Purt, Robert Madsen, Richard Cruickshank, Machell Capps, and Jason Hurt. (*Id.* at CM/ECF p. 48, ¶¶

157–158.) In addition to the foregoing, Plaintiff included the following unrelated allegations in his Complaint:

- Plaintiff was denied access to the law library and the courts by Defendant Tom Pfeifer, the NSP Law Librarian (*id*. at CM/ECF p. 47, ¶¶ 155–156),
- Defendant Dr. Melvin's involvement in Plaintiff's mental health and sex offender treatment "violates HIPPA Law" because Dr. Melvin was hired by Plaintiff's mother to testify on behalf of Plaintiff in his criminal conviction (*id*. at CM/ECF p. 49, ¶ 160), and
- the "Gate Pay of Inmates" is unconstitutional, inadequate, and constitutes cruel and unusual punishment (*id*. at CM/ECF p. 52, ¶ 169).

As relief, Plaintiff seeks declaratory and injunctive relief, including declarations that the Defendants have violated his constitutional rights and court orders requiring the Defendants to take specific actions with respect to Plaintiff's treatment, programming, and placement on work release and parole. In addition, Plaintiff seeks compensatory damages of $1000 for each day after April 21, 2015, punitive damages of $200,000 against Defendants Dr. Melvin, Dr. Bruhn, T. Jackson, Rodriqiez, Simonsen, Jackson (MHPII), and Doe (MHPII), and punitive damages of $100,000 against each remaining Defendant.

## II. SUMMARY OF MOTION TO AMEND COMPLAINT

In his Motion to Amend Complaint (filing no. 15), Plaintiff seeks to add claims against the following seven additional defendants in their individual and official capacities: C. Bottor, Barbara Lewien, Chris Connelly, Unit Manager Larson, Lieutenant Bolli, Sergeant Connett, and Corporal N. Cordero. Plaintiff alleges these Defendants engaged in sexual discrimination against him and violated his constitutional rights to due process, access to the courts, freedom of speech, and to be free from cruel and unusual punishment. These alleged rights violations

stem from an incident that occurred on October 18, 2017, in which Corporal N. Cordero allegedly found Plaintiff engaged in sexual activity with another inmate, and the ensuing misconduct proceedings against Plaintiff.

### III. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## IV. DISCUSSION

### A. Rules of Joinder

Federal Rule of Civil Procedure 20 states that multiple defendants may be joined in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or *arising out of the same transaction, occurrence, or series of transactions or occurrences*." Fed. R. Civ. P. 20(a)(2)(A) (emphasis added). In addition, there must be a "question of law or fact common to all defendants" in the action. Fed. R. Civ. P. 20(a)(2)(B). Under Federal Rule of Civil Procedure 21, the proper remedy for improper joinder of parties is for the court to "drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. The court may do so "[o]n motion or on its own." *Id.*

Here, Plaintiff has sued thirty-four Defendants in his Complaint and seeks to add seven more Defendants. As outlined above, the core of the Complaint's allegations address Plaintiff's claims regarding his delay in being screened for and receiving sex offender programming prior to his parole eligibility date. However, Plaintiff's claims that (1) he was denied access to the prison law library and courts by Defendant Pfeifer, (2) Dr. Melvin's involvement in his treatment "violates HIPPA Law", and (3) the "Gate Pay of Inmates" is unconstitutional are based on unrelated events and do not involve a question of law or fact common to all the

Defendants. Accordingly, the court will sever these claims from the Complaint as the claims are not properly joined against the Defendants named in this action and will drop Tom Pfeifer as a Defendant to this action as the only claim asserted against him (denial of access to the courts) does not involve a question of law or fact common to all the Defendants.

Additionally, the court will deny Plaintiff's Motion to Amend Complaint (filing no. 15) based on the rules of joinder. None of the seven proposed Defendants are properly joined with the Defendants named in the Complaint because the claims asserted in the Motion to Amend Complaint are based on events wholly separate and unrelated to the events and occurrences forming the basis of the Complaint. If Plaintiff wishes to pursue the claims identified in his Motion to Amend Complaint or any of the three unrelated, severed claims identified above, then **Plaintiff will be required to prosecute these unrelated claims in separate actions and he will be required to pay a separate filing fee for each separate action**.

The court will now focus its analysis on Plaintiff's remaining claims related to his programming and parole.

## B. Sovereign Immunity

Plaintiff has sued the Defendants named in the caption in their official and individual capacities for declaratory, injunctive, and monetary relief. Plaintiff did not specify the capacity in which the other eleven Defendants are sued so the court "assume[s] that [each] defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thus, the first question the court must address is to what extent, if any, the Eleventh Amendment bars Plaintiff's claims.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.; Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Thus, the Eleventh Amendment bars Plaintiff's claim for damages against all the Defendants in their official capacities.

Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity. Because Plaintiff seeks both equitable relief as well as damages from Defendants in their individual capacities, the court will review the Complaint to determine if Plaintiff has set forth sufficient allegations to proceed against any of the Defendants on any of his claims.

## C. Lack of Personal Involvement

Of the thirty-four Defendants named by Plaintiff, Plaintiff does not allege that the following thirteen Defendants violated any of his constitutional rights— Cotton, Richards, Hardgraves, Chandler, Scow, Divis, Tan, Millier, Marshall, and John Does I, II, III, and IV. (*See* Filing No. 1 at CM/ECF pp. 46–48, ¶¶ 154–158 (identifying legal claims).) Additionally, there are no factual allegations in the Complaint to suggest that any of these thirteen Defendants' conduct violated Plaintiff's constitutional rights. At most, the few allegations in which these Defendants are mentioned merely provide context and background information for Plaintiff's claims. Because Plaintiff failed to allege that these thirteen Defendants

were personally involved in violating his constitutional rights, his Complaint fails to state a claim upon which relief may be granted against them. *See Topchian v. JPMorgan Chase Bank*, N.A., 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." (internal quotation marks omitted)).

Plaintiff also fails to allege any personal involvement in the alleged misconduct against Plaintiff by Defendants Ricketts, Heineman, Frakes, Kenney, Houston, Rothwell, Sabatka-Rine, Madsen, Cruickshank, and Hurt. Moreover, to the extent Plaintiff alleges these Defendants are liable based on their past or present responsibility for the overall operation of the NDCS prison system, his claims fail because respondeat superior is not a basis for liability under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability). Accordingly, Plaintiff has failed to state a claim for relief against Defendants Ricketts, Heineman, Frakes, Kenney, Houston, Rothwell, Sabatka-Rine, Madsen, Cruickshank, and Hurt.

With respect to Defendants Kohl and Capps, Plaintiff may only seek injunctive relief against these two Defendants as they are sued in their official capacity only. However, Plaintiff fails to state an injunctive-relief claim against Kohl or Capps because he did not attribute any alleged ongoing misconduct to either Defendant.[5] *See Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) ("To

---

[5] The court notes that the only specific acts alleged to have been committed by these Defendants involve responding to Plaintiff's grievances. (*See* Filing No. 1 at CM/ECF pp. 16–17, 34–36, ¶¶ 68–69, 125–126, 128–129.) To the extent Plaintiff is attempting to base Kohl's and Capps' liability on their failure to investigate or adequately respond to his grievances, he fails to state a claim for relief under § 1983. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as

establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom . . . or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner.") Moreover, Plaintiff's move from the NSP to the LCC moots his claim for injunctive relief against Capps, the Deputy Warden of NSP, as she is not capable of providing such relief now that Plaintiff has changed institutions. *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute because plaintiff was moved to another institution, plaintiff's claims for injunctive relief against defendants were moot); *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (noting that a case is moot when circumstances change to such a degree that "a federal court can no longer grant effective relief"); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (concluding that claim for injunctive relief against warden was moot because prisoner was transferred to another prison).

Thus, the court will address Plaintiff's claims relating to his programming and parole only with respect to the remaining Defendants—Purt, Dr. Melvin, Dr. Bruhn, T. Jackson, Rodriqiez, Simonsen, Jackson (MHPII), and Doe (MHPII) (hereinafter "the Defendants").

## D. Substantive Claims

Liberally construed, Plaintiff alleges retaliation, deliberate indifference, due process, and equal protection claims under the First, Eighth, and Fourteenth Amendments. For the following reasons, the court concludes Plaintiff has failed to state a plausible claim for relief under any of these constitutional provisions but

---

would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances).

will give Plaintiff leave to file an amended complaint with respect to his equal protection claim.

## 1. First Amendment

Liberally construed, Plaintiff alleges the Defendants retaliated against him for speaking about his Bondage, Dominance, Sadism, and Masochism ("BDSM") and Blood Letting tendencies in B-Help group and on the unit by giving him an unsatisfactory completion of B-Help and recommending I-Help. Plaintiff seeks to prevent the Defendants from using any of Plaintiff's statements regarding BDSM or Blood Letting or alleged statements made by Plaintiff as reported by other inmates in making any treatment decisions.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir.2001)).

Plaintiff's speech in the B-Help group sessions and to other inmates on the unit about group topics does not constitute a protected activity for purposes of a First Amendment retaliation claim. *Cf. Seenyur v. Coolidge*, No. CV 14-4250 (WMW/BRT), 2016 WL 7971295, at *7 (D. Minn. July 21, 2016), *report and recommendation adopted*, No. 14-CV-4250 (WMW/BRT), 2016 WL 4467887 (D. Minn. Aug. 22, 2016), *aff'd sub nom. Johnson v. Coolidge*, 692 F. App'x 320 (8th

Cir. 2017) ("Because participation in a sex offender treatment program bears a rational relation to a legitimate penological objective, [the prisoner plaintiff] was not engaged in activity protected by the First Amendment when he allegedly chose not to speak during the group feedback exercise." (internal quotation omitted)). Moreover, the Defendants' use of Plaintiff's statements in group therapy and to other inmates on the unit in making treatment decisions does not violate Plaintiff's First Amendment rights as his free speech rights are limited by the NDCS prison officials' legitimate interest in Plaintiff's treatment and rehabilitation. *See id.* ("[A] prison inmate, by virtue of his lawful incarceration, retains only 'those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system,' *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Correctional systems have a vital interest in rehabilitating convicted sex offenders through clinical programs . . . ."). Plaintiff, thus, fails to state a plausible claim for relief under the First Amendment.

### 2. Eighth Amendment

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (internal quotation marks omitted). An objectively serious medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). Deliberate disregard requires "more than negligence, more even than gross negligence, but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotation marks and

citation omitted). Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff has alleged no facts suggesting Defendants were deliberately indifferent to an objectively serious medical need. Liberally assuming Plaintiff's need for sex offender programming is an objectively serious medical need, the Complaint's allegations establish that Plaintiff has been assessed for and received some sex offender programming. Plaintiff merely is disappointed with the delay in being screened and initiation of treatment. No facts alleged suggest that Plaintiff faced a serious risk of harm from the delay in the initiation of his programming. *See Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) ("Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed."). Rather, the only "harm" alleged is Plaintiff's inability to complete his programming prior to his parole eligibility date. These allegations do not establish an Eighth Amendment violation, and Plaintiff's deliberate indifference claim must be dismissed.

### 3. Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S.

472, 487 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

A liberty interest arises under the Due Process Clause when the consequences of the state's actions are "stigmatizing" and "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980)). An inmate does not have a constitutionally-protected liberty interest in the possibility of parole. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 9–11 (1979)). Further, an inmate has no liberty interest in the possibility of parole if the action was within the original sentence imposed. As set forth in *Persechini*:

> [T]here is no protected liberty interest, for example, in the sentence reduction that may be granted upon completing a Bureau of Prisons drug treatment program, *Giannini v. Fed. Bureau of Prisons*, 405 Fed. Appx. 96, 97 (8th Cir. 2010) (unpublished); or in halfway-house placement after completing a drug-treatment program, *Staszak v. Romine*, 2000 WL 862836, at *1 (8th Cir. June 29, 2000) (unpublished); or in remaining in a work release program, *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996); or in participating in a drug treatment program to qualify for early release, *Koch v. Moore*, 1995 WL 141733, at *1 (8th Cir. April 4, 1995) (unpublished); or in remaining in a discretionary "shock incarceration program," *Klos v. Haskell*, 48 F.3d 81, 88 (2d Cir. 1995); or in participating in Missouri's sex offender treatment program, *Jones v. Moore*, 996 F.2d 943, 945 (8th Cir. 1993).

*Persechini*, 651 F.3d at 807. Put simply, "[t]he general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808 (internal quotation marks omitted).

A state-created liberty interest arises when a statute or regulation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487. In Nebraska, while the NDCS is required by statute to provide an inmate "with adequate access or availability to mental health therapy prior to the first parole eligibility date," Neb. Rev. Stat. § 83-1,110.01, taking advantage of self-improvement opportunities, such as completion of mental health treatment, is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83-1,114(2).

Here, Plaintiff complains that C-Sort failed to screen him in a timely manner for sex offender programming and unfairly determined that he should complete I-Help after his unsuccessful completion of B-Help. As a result, Plaintiff complains that his chance at parole was affected by his inability to complete his programming prior to his parole eligibility date. As set forth above, there is no liberty interest in parole, or even the possibility of parole, arising from the Due Process Clause itself. There is no indication the Defendants have taken any action outside of the sentence originally imposed upon Plaintiff, or that there has been an increase in his original sentence as a result of the Defendants' actions. Therefore, the Due Process Clause itself does not afford Plaintiff any protection.

In addition, Plaintiff cannot demonstrate that he has a state-created liberty interest in parole. He cannot show that he has suffered an atypical or significant hardship as a result of the delay in completing his recommended sex offender programing. For example, he does not allege that he has been transferred to a markedly more restrictive facility while awaiting treatment or had a previously-

granted right revoked. His only potential hardship is that he may not be paroled at the earliest opportunity, if at all, and such a possibility is neither atypical or significant in regular prison life. That is, Plaintiff may simply be required to serve out the remainder of his sentence under the same conditions as other prisoners.

Importantly, Plaintiff also cannot demonstrate that his inability to complete his sex offender programming will necessarily impact the duration of his sentence. There is no guarantee that Plaintiff will complete the programming if given the opportunity, nor does completion of programming mandate Plaintiff's parole under Nebraska law. Additionally, the Nebraska Board of Parole has the discretionary power to examine numerous other factors in determining whether or not parole will be granted.

In short, Plaintiff does not have a liberty interest in being granted access to sex offender programming at a time that will allow him to complete it ahead of his parole eligibility date, regardless of its potential impact on his chance at parole. Therefore, Plaintiff's due process claim must be dismissed for failure to state a claim upon which relief may be granted. Because the only factual allegations regarding Defendant Mario Purt relate to Plaintiff's due process claim, (*see* filing no. 1 at CM/ECF pp. 15–16, ¶¶ 63–64), Plaintiff has failed to state a claim against Purt, and he will be dismissed as a defendant.[6]

*4. Equal Protection*

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994), citing *City of Cleburne v.*

---

[6] As the court explained above, to the extent Plaintiff alleges Purt is liable for any constitutional violations based on his role as a prison supervisor, his claims fail because respondeat superior is not a basis for liability under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability).

*Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Id.* "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*

*In re Honorable John Dan Kemp*, 894 F.3d 900, 909–10 (8th Cir. 2018) ("'[d]issimilar treatment of dissimilarly situated persons does not violate equal protection'") (quoting *Klinger*, 31 F.3d at 731). An equal protection violation also requires "an intent to discriminate." *Id.*; *see also Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) ("In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim.").

Giving the Complaint its most liberal construction, Plaintiff alleges that the Defendants violated the Equal Protection Clause's prohibition against sex-based discrimination because the decision to give him an unsatisfactory completion of B-Help and recommend I-Help was due to his gender non-conformity and/or sexual orientation. Plaintiff states that he told Defendants Jackson (MHPII) and Doe (MHPII) that he identified as transgender and led a homosexual lifestyle and that this conversation was listed as one of the reasons for his unsatisfactory completion and I-Help recommendation. Courts have recognized an equal protection "class of one" claim where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff has not alleged sufficient facts to state a plausible equal protection claim. Plaintiff has not alleged facts suggesting that he was treated differently from similarly situated people and the Complaint's allegations suggest a

rational basis for the Defendants' treatment decision based on Plaintiff's failure to disclose relevant information during his screening interview. On the court's own motion, Plaintiff shall be given leave to amend his Complaint to state an equal protection claim against Defendants Dr. Melvin, Dr. Bruhn, T. Jackson, Rodriqiez, Simonsen, Jackson (MHPII), and Doe (MHPII).

## V. OTHER PENDING MOTIONS

### A. Motion for Appointment of Counsel

With his Complaint, Plaintiff filed a motion seeking the appointment of counsel. (Filing No. 3.) The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id.* Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

### B. Motion for Summons

Plaintiff has filed what the court construes as a motion for summons. (Filing No. 4.) As pled, Plaintiff's Complaint fails to state a claim upon which relief may be granted. This matter will not proceed to service unless so ordered by this court after review of an amended complaint. Accordingly, Plaintiff's motion for summons is denied.

## C. Motion for Temporary Restraining Order

Plaintiff filed an "Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order" which the court construes as a motion for a preliminary injunction and temporary restraining order. (Filing No. 16.) In the motion, Plaintiff generally seeks to restrain the Defendants from hindering his prosecution of this case, harassing or retaliating against him or any inmates who provide evidence or file grievances in support of Plaintiff's case, and to require the Defendants to provide Plaintiff with certain documents and remove Dr. Melvin from involvement in Plaintiff's treatment.

The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's motion. In *Dataphase*, the Eighth Circuit Court of Appeals, sitting en banc, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. *Id.* at 114. Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

Here, Plaintiff has alleged no facts demonstrating that he faces a threat of irreparable harm, but rather he only describes the relief he seeks. Accordingly, the court will deny Plaintiff's motion for a preliminary injunction and temporary restraining order.

## VI. CONCLUSION

Plaintiff's Complaint fails to state plausible claims for relief under the First, Eighth, and Fourteenth Amendments. With the exception of Plaintiff's Fourteenth Amendment equal protection claim, the court concludes that any amendment of these claims would be futile. However, on its own motion, the court will grant Plaintiff thirty days to file an amended complaint which states a plausible equal protection claim against Defendants Dr. Melvin, Dr. Bruhn, T. Jackson, Rodriqiez, Simonsen, Jackson (MHPII), and Doe (MHPII). Plaintiff's claims against the remaining Defendants are dismissed for failure to state a claim upon which relief may be granted, and Plaintiff's claims for monetary relief against all Defendants in their official capacities are dismissed as barred by the Eleventh Amendment.

Plaintiff's Motion to Amend Complaint (filing no. 15) is denied, and the three unrelated claims in the Complaint identified by the Court are severed from this action pursuant to the joinder rules, as is the defendant, Tom Pfeifer. *See* Fed. R. Civ. P. 20(a)(2) and 21.

If Plaintiff chooses to file an amended complaint, he should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the clerk of the court will provide to him. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his claims against Defendants will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's Motion for Appointment of Counsel (filing no. 3), Motion for Summons (filing no. 4), Motion to Amend Complaint (filing no. 15), and Motion for Preliminary Injunction and Temporary Restraining Order (filing no. 16) are denied.

2.      Plaintiff has until **October 26, 2018**, to file an amended complaint which states a plausible equal protection claim against Defendants Dr. Melvin, Dr. Bruhn, T. Jackson, Rodriqiez, Simonsen, Jackson (MHPII), and Doe (MHPII). Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. If Plaintiff chooses to file an amended complaint, the court will conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) and 1915A in the normal course of business.

3.      All other remaining claims are dismissed without prejudice and without leave to amend. Plaintiff may not allege any additional claims in this action.

4.      The clerk of the court is directed to set a pro se case management deadline using the following text: **October 26, 2018**: check for amended complaint.

5.      The clerk of the court is directed to send to Plaintiff a blank civil complaint form.

Dated this 26th day of September, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge